UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIEL FRITZ,

        Plaintiff,

        v.

PHILLIPS SERVICE INDUSTRIES,
INC., a Michigan corporation,

        Defendant.

_____/

CASE NO. 4:06-CV-11149
JUDGE PAUL V. GADOLA
MAGISTRATE JUDGE PAUL KOMIVES

### REPORT AND RECOMMENDATION ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT (docket #24 and #26)

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     C.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
         1.    *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
         2.    *Plaintiff's Entitlement Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
              a. Entitlement to FMLA Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
              b. Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
         3.    *Retaliation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
     D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

\*      \*      \*      \*      \*

I.     <u>RECOMMENDATION</u>: The Court should deny plaintiff's motion for partial summary judgment (docket #24) and deny defendant's motion for summary judgment (docket #26).

II.    <u>REPORT</u>:

A.    *Background*

       Plaintiff Daniel Fritz commenced this action on March 17, 2006, by filing a complaint in this Court alleging that defendant Phillips Service Industries, Inc. (PSI), violated the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, by terminating his employment. At the time, plaintiff was

working for Beaver Aerospace & Defense, Inc., a subsidiary of PSI, where he had worked since January 20, 1998. Plaintiff worked in the shipping and receiving department throughout his tenure, until his termination on May 4, 2005. *See* Compl., ¶¶ 6, 16. The matter is currently before the Court on the parties' cross-motions for summary judgment.

The basic facts are not in dispute. Plaintiff began his employment with PSI[1] on January 20, 1998, at which time he was provided with an employee handbook setting forth PSI's policies regarding time off, including family and medical leave. Petitioner read this handbook. *See* Def.'s Mot., Ex. 2, Dep. Tr. of Daniel Fritz, at 13, 17 [hereinafter "Fritz Dep."]; Ex. 7. During his employment, plaintiff was granted FMLA leave for the birth of his son, acute gastroenteritis, and a laparscopic cholecystectomy. *See* Fritz Dep., at 33-34, 47-49; Def.'s Mot., Exs. 8-9, 11. Plaintiff's current claim is not based on any of these underlying issues. Rather, plaintiff's current claim relates to problems with his right knee.

In November 2001 plaintiff tore the meniscus (cartilage) of his right knee.[2] The tear was repaired by outpatient arthroscopic surgery on November 16, 2001. *See* Def.'s Mot., Ex. 12. Plaintiff retore his meniscus and had a second surgery in March 2002. *See id.*, Ex. 13; Pl.'s Resp., Exs. C-D. The surgeries were performed by Dr. Joseph Walkiewicz. On April 16, 2003, plaintiff met with Dr. Walkiewicz, complaining of swelling and pain in his leg. Dr. Walkiewicz scheduled plaintiff for high tibial valgus osteotomy surgery on May 27, 2003. Plaintiff request FMLA leave to begin on May 20, 2003, and to last for approximately six to eight weeks. Dr. Walkiewicz's

---

[1]Although plaintiff was actually employed by Beaver Aerospace, his pay checks were issued by PSI, and the parties refer to PSI as plaintiff's employer.

[2]Plaintiff also had multiple surgeries on his left knee in 1999 and 2000. *See* Pl.'s Resp., Exs. A-B

certification anticipated a return to work date of August 2, 2003. Plaintiff's request for leave was granted. *See* Fritz Dep., at 39-40; Def.'s Mot., Exs. 10, 14; Pl.'s Resp., Exs. E, F. Plaintiff returned to work on August 11, 2003, with a restriction on lifting over 50 pounds and use of the right leg. PSI honored those restrictions. *See* Fritz Dep., at 47-49; Def.'s Mot., Ex. 16; Pl.'s Resp., Ex. E. Plaintiff took an additional two weeks of leave in September 2003 due to complications from the surgery. *See* Fritz Dep., at 47-48. Throughout his employment with PSI, plaintiff had attendance issues which resulted in several warnings. *See* Def.'s Mot., Exs. 18-24.

Plaintiff's complaint here involves his absences on May 2-3, 2005, and his subsequent termination. In April, plaintiff visited two new orthopaedic surgeons, Dr. Joseph Finch and Dr. Elie Khoury, complaining of pain in both knees. *See* Pl.'s Resp., Ex. G. On April 25, 2005, Dr. Khoury determined that plaintiff was temporarily disabled from work from April 18-25. *See id.* Plaintiff used eight vacation days for this period. *See* Fritz Dep., at 72; Def.'s Mot., Ex. 25; Pl.'s Resp., Ex. H. Plaintiff admitted in his deposition that he did not inform PSI that this time off was related to any health condition and that he did not seek FMLA leave at this time. *See* Fritz Dep., at 72-73. Plaintiff does contend, however, that in April 2005 he requested medical leave for an impending surgery scheduled for May 24, 2005. *See id.* at 75-76, 88, 90; Pl.'s Resp., Ex. G. By the end of April, plaintiff had exhausted all of his vacation and personal days for 2005. *See* Def.'s Mot., Ex. 25. Plaintiff did not report for work on May 2 and May 3, 2005. *See* Fritz Dep., at 80. On May 2, plaintiff spoke with his supervisor, Bernard Vaughn, and told Vaughn that his knee was swollen and he was in severe pain, and that he had scheduled an appointment with his orthopaedic surgeon. *See* Fritz Dep., at 80; Pl.'s Resp., Ex. F, response to request for admission No. 11; *id.*, Ex. I, Dep. Tr. of Bernard Vaughn, at 30-32 [hereinafter "Vaughn Dep."]. Plaintiff contends that he again called

Vaughn to report his absence on May 3, but Vaughn disputes this. *See* Fritz Dep., at 81; Vaughn Dep., at 32. On May 3, plaintiff was seen by Dr. Finch, who provided a note excusing plaintiff from work on May 2-3. *See* Pl.'s Resp., Ex. N.

Plaintiff reported for work on May 4, 2005. At that time, Vaughn escorted plaintiff to the office of Jason Ratcliffe, who told plaintiff that his employment was being terminated due to his unexcused absences on May 2-3. *See* Fritz Dep., at 87; Vaughn Dep., at 33; Pl.'s Resp., Ex. O. At this meeting, plaintiff provided Vaughn and Ratcliffe with a copy of Dr. Finch's disability note. *See* Fritz Dep., at 82; Vaughn Dep., at 34, 73; Pl.'s Resp., Ex. K, Dep. Tr. of Jason Ratcliffe, at 20-21 [hereinafter "Ratcliffe Dep."]. This note was passed along to Jeffrey Tomschin, PSI's Director of Human Resources. *See* Ratcliffe Dep., at 22-23. Tomschin testified in his deposition that, if plaintiff had in fact presented a request for FMLA leave with an appropriate doctor's certification, the leave likely would have been granted. *See* Pl.'s Resp., Ex. M, Dep. Tr. of Jeffrey Tomschin, at 25-26.

This matter is currently before the Court on the parties cross-motions for summary judgment. On February 26, 2007, plaintiff filed a motion for partial summary judgment, asserting that he is entitled to summary judgment on defendant's liability under FMLA. Defendant filed a response on March 21, 2007, and plaintiff filed a reply on March 27, 2007. Meanwhile, on March 2, 2007, defendant filed a motion for summary judgment arguing that plaintiff cannot establish a genuine issue of material fact because (1) his knee problems in May 2005 did not constitute a "serious health condition" for which he was entitled to leave under FMLA, and (2) he provided insufficient notice of his intent to take FMLA leave. Plaintiff filed a response to defendant's motion on April 6, 2007, and defendant filed a reply on April 27, 2007.

B.    *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

However where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997); *see also*, *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992).[3] In other words, in such a case the movant "must satisfy both the initial burden of production on the summary judgment motion–by showing that no genuine dispute exists as to any material fact–and the ultimate burden of persuasion on the claim–by showing that it would be entitled to a directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477-78 (1991). "Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

---

[3]*See also International Ass'n of Heat and Frost Insulators and Asbestos Workers Local Union 42 v. Absolute Environmental Services, Inc.*, 814 F.Supp. 392, 401 (D. Del. 1993) ("When the moving party seeks summary judgment based on a claim or defense upon which the moving party bears the ultimate burden of proof at trial, the moving party must establish every element of that claim or defense as a matter of law such that no reasonable jury could return a verdict for the nonmovant.").

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.      *Analysis*

      1.      *Applicable Law*

"The FMLA provides that an eligible employee . . . is entitled to medical leave in the event of 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 553-54 (6th Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)). As the Sixth Circuit has explained, there are two theories for recovery under FMLA: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Id.* at 555 (internal quotation omitted). A FMLA retaliation claim is governed by the familiar burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). Under this framework, plaintiff has the burden of demonstrating a prima facie case of retaliation. *See Skrjanc*, 272 F.3d at 315 (citing *McDonnell Douglas*, 411 U.S. at 802. In order to demonstrate a prima facie case, plaintiff must show that:

> (1) []he was engaged in activity protected by the FMLA; (2) the employer knew that
> []he was exercising her rights under the FMLA; (3) after learning of the employee's
> exercise of FMLA rights, the employer took an employment action adverse to h[im];
> and (4) there was a causal connection between the protected FMLA activity and the

adverse employment action.

*Killian*, 454 F.3d at 556.  If plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse action.  *See Skrjanc*, 272 F.3d at 315 (citing *McDonnell Douglas*, 411 U.S. at 802-04).  Once defendant does so, the burden shifts back to plaintiff to demonstrate that the articulated reason is merely a pretext designed to mask discrimination.  *See id.* (citing *McDonnell Douglas*, 411 U.S. at 804-06).

Unlike a retaliation claim under FMLA or a discrimination claim under other civil rights statutes, an interference claim under FMLA concerns not whether an employer treated an employee differently, but whether the employer granted substantive rights to which the employee was entitled. For this reason, the courts that have considered the matter have found that the *McDonnell Douglas* framework is inapplicable to a FMLA interference claim.  *See Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001); *Rankin v. Seagate Tech., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001); *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712-13 (7th Cir. 1997).  To succeed on a FMLA interference claim, therefore, plaintiff need only show by a preponderance of the evidence that:

> (1) []he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave notice of h[is] intentions to take leave; and (5) the employer denied the employee FMLA benefits to which []he was entitled.

*Killian*, 454 F.3d at 556 (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

2.      *Plaintiff's Entitlement Claim*

Turning first to plaintiff's entitlement claim, the Court should conclude that neither party is entitled to summary judgment with respect to this claim.

*a.  Entitlement to FMLA Leave*

Under FMLA, a qualified employee is entitled to up to twelve weeks of leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves–(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id*. § 2611(11). The Department of Labor regulations elaborate on this statutory definition. As relevant here, the regulations further defining the term "serious health condition" as

> an illness, injury, impairment, or physical or mental condition that involves:
> (1) Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity . . . or any subsequent treatment in connection with such inpatient care; or
> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment includes any one or more of the following:
> (i) A period of incapacity . . . of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
> . . . .
> (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114(a).

Here, there is no question that plaintiff's incapacity on May 2-3, 2005, does not standing alone constitute a "serious health condition" under the statute and regulation. The period of incapacity did not involve inpatient hospitalization, nor did it last for longer than three days. Rather, the question here is whether these days constitute "any subsequent treatment or period of incapacity relating to the same condition" under 29 C.F.R. 825.114(a)(2)(i), that is, whether the incapacity on May 2-3 is related to the plaintiff's 2003 surgery on his right knee. To satisfy this regulation, plaintiff "must first demonstrate a period of incapacity (i.e., the inability to work) for at least four consecutive days. Next he must show that he received subsequent treatment or had a period of incapacity, in which he was either seen at least two times by a health care provider . . . or obtained a regimen of continuing treatment under the supervision of a health care provider." *Murray v. Red Kap Indus., Inc.*, 124 F.3d 695,698 (5th Cir. 1997); *see also*, *Fink v. Ohio Health Corp.*, 139 Fed. Appx. 667, 670 (2005). At first glance, plaintiff appears to have sufficient evidence to withstand summary judgment on this issue. There is no question that plaintiff's 2003 period of incapacity lasted for more than three days, and plaintiff provides Dr. Finch's affidavit, in which Dr. Finch avers that he saw plaintiff more than two times and that plaintiff was under a continuing regimen of physical therapy. *See* Def.'s Resp., Ex. R, Aff. of Dr. Joseph Finch, ¶¶ 5-6 [hereinafter "Finch Aff."].

What is lacking, however, is evidence of a causal connection between the 2003 surgery and the subsequent period of incapacity and treatment in 2005. It is not enough to show merely a prior period of incapacity and subsequent treatment or incapacity; rather, under the regulation that subsequent period of incapacity or treatment must "relate[] to the same condition." 29 U.S.C. § 824.114(a)(2)(i). In other words, plaintiff "must present some evidence to show that the absences

in [May 2005] involved continued, subsequent treatment or period of incapacity *relating to* the" 2003 knee condition. *Stiefel v. Allied Domeco Spirits & Wine U.S.A., Inc.*, 184 F. Supp. 2d 886, 891 (W.D. Ark. 2002) (emphasis added) (citing *Caldwell v. Holland of Tex., Inc.*, 208 F.3d 671, 674 (8th Cir. 2000)).

Unfortunately, neither the statute nor the regulation provides any guidance on determining whether a subsequent "condition" is the same as a prior one, and I have been unable to find a single case addressing this issue. However, a broad interpretation of "condition" would run counter to the ordinary meaning of the phrase "same condition." This phrase connotes an identity of the underlying cause of the plaintiff's symptoms. It cannot be the case that any medical problem resulting in similar symptoms or involving the same parts of the body are the "same condition" without unmooring the words "same" and "condition" from their ordinary meanings. Further, such a broad interpretation of the "same condition" requirement would "place employers in a position of grave uncertainty in complying with their obligations under the FMLA." *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1320 (10th Cir. 2005). For example, suppose an employee has difficulty breathing due to exposure to smoke which requires his hospitalization, thus entitling him to FMLA leave. Several years later, the employee has difficulty breathing caused by bronchitis but which only incapacitates him for two days. Although both incapacities were brought about by the same symptom (difficulty breathing) affecting the same body part, no regular English usage would lead to the conclusion that the second incapacity was related to the "same condition" as the first.

With this understanding of "same condition," the Court should conclude that genuine issues of material fact remain which preclude summary judgment for either party. In his affidavit, Dr. Finch opines, without detail, that plaintiff's May 2-3 incapacity was related to his prior knee

condition. *See* Finch Aff., ¶ 8. Were this all plaintiff had, it would be insufficient to withstand summary judgment under Rule 56(e), which requires the nonmoving party to set forth "specific facts" showing his entitlement to trial. *See Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 952 (7th Cir. 2000) (quoting *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598-99 (6th Cir. 1999)) ("Dr. Hamilton's statement does not provide 'specific facts'; it is 'merely conclusory, restating the requirements of the law.'"). However, in addition to Dr. Finch, plaintiff has provided his medical records relating to the May 2005 treatment of his medical condition. This treatment involved a further surgery to repair the meniscus and remove the plate which had been placed in the 2003 surgery. *See* Pl.'s Mot. for Partial Summ. J., Ex. G.[4] These records at least suggest a connection between the problems plaintiff had with his knee in 2003 and the 2003 surgery, on the one hand, and his 2005 problems on the other hand. This is sufficient to show a genuine issue of material fact with respect to whether the May 2005 condition was the same condition as the 2003 knee condition.[5]

At the same time, however, plaintiff's medical records are not sufficient to entitle plaintiff to summary judgment on this issue. While Dr. Finch states that the 2005 and 2003 treatments related to the same condition, he states so in conclusory fashion with no explanation of the medical

---

[4]Although plaintiff was terminated prior to his May 2005 surgery, this medical information is relevant here. Whether plaintiff had a "serious health condition" is an objective inquiry, and thus "[w]hen deciding whether an alleged FMLA plaintiff suffered from a 'serious health condition' a court can consider evidence of a plaintiff's medical condition that arose after the employer acted adversely against him or her." *Maynard v. Total Image Specialists, Inc.*, 478 F. Supp. 2d 993, 999 (S.D. Ohio 2007); *see also*, *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 512 (6th Cir. 2006).

[5]Defendant notes that Dr. Finch was not the doctor who treated plaintiff for his 2003 knee condition. However, the regulation requires only that plaintiff have received continuing treatment from "*a* health care provider." Neither the regulation nor the statute require that plaintiff have been treated by the same health care provider for the incapacities to be considered related to the "same condition." *See Sims v. Alameda-Contra Costa Transit Dist.*, 2 F. Supp. 2d 1253, 1265 (N.D. Cal. 1998).

bases for this opinion. *See Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Moore*, 221 F.3d at 952. Further, Dr. Finch diagnosed plaintiff as suffering from osteoarthritis, but does not specifically opine that the osteoarthritis is a result of the previous knee condition. Because the 2005 surgery also involved a repair of a torn meniscus and removal of the previously placed plate in plaintiff's knee, the records suggest that the same condition may have been involved. Nothing in the medical records, however, definitively establishes this connection and it is not clear, particularly given the length of time between the two procedures, whether plaintiff's problems in 2005 were ongoing problems stemming from the same meniscus tear as in 2003 or the result of a separate injury or condition. As noted above, as the party who bears the burden of proof to establish that his 2005 incapacity was the result of a "serious health condition" plaintiff must establish as a matter of law each element of his claim to be entitled to summary judgment. Plaintiff's evidence falls short of this mark. Accordingly, the Court should conclude that neither plaintiff nor defendant is entitled to summary judgment on plaintiff's entitlement claim.[6]

### b. Notice

The Court should also conclude that defendant is not entitled to summary judgment on plaintiff's FMLA claim based on the inadequacy of plaintiff's notice. It is true that "[t]o invoke the FMLA's protection . . . the eligible employee, during his employment, must request leave and give the employer notice that he is requesting leave for a serious health condition that renders him unable

---

[6]To the extent plaintiff also claims that he has a chronic serious health condition under 29 C.F.R. § 825.114(a)(2)(iii), however, the Court should conclude that plaintiff has presented insufficient evidence to present this basis for relief to the jury. A chronic serious health condition requires that the plaintiff have received "periodic" treatment. *See id*. § 825.114(a)(2)(iii)(A). Here, there is no evidence that plaintiff received any treatment between the follow-up appointments in 2003 and his visit with Dr. Finch in May 2005. This gap in treatment precludes a finding of periodic treatment necessary to show a chronic condition. *See Fink*, 139 Fed. Appx. at 670-71.

to perform his position's duties." *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 421 (6th Cir.

2004). It is equally true, however, an employee "does not have to expressly assert [a] right to take

leave as a right under the FMLA." *Cavin v. Honda of Am. Mgf., Inc.*, 346 F.3d 713, 726 (6th Cir.

2003). Indeed, an employee need not mention FMLA at all. *See Walton*, 424 F.3d at 486; 29 C.F.R.

§ 825.303(b). All that is required is that the employee provide sufficient information to apprise the

employer of his request to take time off for a serious health condition. *See Walton*, 424 F.3d at 486;

*Cavin*, 346 F.3d at 723-24. As another Judge of this Court has recently explained:

> Once the employee communicates that leave is needed, "[t]he burden then
> shifts to the employer to determine whether leave was sought under the Act and to
> obtain any additional information." *Sahadi v. Per Se Technologies, Inc.*, 280 F. Supp.
> 2d 289, 298 (E .D. Mich.2003). If the employer lacks sufficient information about
> the employee's reasons for taking leave, the employer has the duty to inquire further
> to ascertain whether the leave is potentially FMLA-qualifying. *Cavin*, 346 F.3d at
> 726; *Sadhadi*, 280 F. Supp. 2d at 698. Moreover, where the employer has prior
> knowledge of the plaintiff-employee's serious health condition, there is a burden on
> the employer to inquire further *whenever* the employee calls in sick for medical
> reasons to determine if those reasons were FMLA-qualifying. *Miller v. GB Sales &
> Service, Inc.*, 275 F. Supp. 2d 823, 829 (E.D. Mich.2003) (J. Edmunds) (emphasis
> added).

*McLaughlin v. Innovative Logistics Group, Inc.*, No. 05-72305, 2007 WL 313531, at *5 (E.D. Mich.

Jan. 30, 2007) (Cohn, J.).

Here, there is sufficient evidence of proper notice that defendant is not entitled to summary

judgment on this basis. It is undisputed that plaintiff phoned PSI on May 2 and spoke with Vaughn,

telling Vaughn that his knee was painful and swollen, and that he needed to see his doctor. *See* Fritz

Dep., at 80; Vaughn Dep., at 30-31; Pl.'s Resp., Ex. F, Answer to Request for Admission No. 11.

Further, although Vaughn disputes this, *see* Vaughn Dep., at 32, plaintiff testified that he phoned

again on May 3, telling Vaughn that he was still unable to work due to pain and swelling in the knee

and that he had an appointment with his doctor scheduled for later in the day. *See* Fritz Dep., at 81.

On May 3, Dr. Finch evaluated plaintiff and provided him with a note stating that plaintiff could not work on May 2-3 due to his knee condition. Plaintiff presented this note to Vaughn and Ratcliffe upon his return to work on May 4. *See* Fritz Dep., at 82; Vaughn Dep., at 34, 73; Ratcliffe Dep., at 20-21. Nevertheless, defendant terminated plaintiff's employment. There is no evidence that Vaughn, Ratcliffe, or anyone else at PSI demanded any further information or documentation before terminating plaintiff's employment. Indeed, Tomschin testified that, had plaintiff provided a doctor's note excusing him from work on May 2-3, he should have been provided with the appropriate FMLA forms and, had those been completed, he likely would have been granted FMLA leave. *See* Tomschin Dep., at 25-26.

Defendant argues that plaintiff never indicated that his May 2-3 problems resulted from the same underlying condition as his previous knee problems, and because the May 2-3 problems only incapacitated him for two days, plaintiff did not provide sufficient notice that his May 2-3 problems were a FMLA-qualifying "serious health condition." As noted above, however, plaintiff was not required to cite FMLA chapter and verse, nor was he required to fully demonstrate his entitlement to FMLA leave in order for his notice to be sufficient. After all, employees such as plaintiff "are workers, not lawyers." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 763 (5th Cir. 1995). All that was required was that plaintiff provide sufficient notice to PSI that a FMLA-qualifying serious health condition may have been involved. *See Cavin*, 346 F.3d at 723-24 (emphasis added) (an employee "is only required to give sufficient information to put the employer on notice that the leave *may* be FMLA-qualifying leave."). Once he did so, it was PSI's burden to inquire further to determine whether plaintiff's incapacity stemmed from a serious health condition, particularly in light of the undisputed fact that PSI was well aware of plaintiff's prior problems with his right knee.

*See Tornberg v. Business Interlink Servs., Inc.*, 237 F. Supp. 2d 778, 785 (E.D. Mich. 2002) (Cohn, J.); 29 C.F.R. § 825.302(c).[7]

Nor can defendant rely on plaintiff's failure to provide the appropriate FMLA forms to PSI or on any inadequacies in plaintiff's medical documentation. Because plaintiff's incapacity was unforeseen, plaintiff was allowed a reasonable time, up to two days, to provide appropriate notice. *See* 29 C.F.R. § 825.303(a). Likewise, that the full facts entitling plaintiff to FMLA leave were not known to defendant at the time of plaintiff's termination is immaterial. As explained above, plaintiff provided sufficient information to defendant to require defendant to inquire further into the basis for plaintiff's request. That defendant terminated plaintiff's employment before plaintiff had a reasonable time to comply with defendant's leave policies or provide sufficient medical certification does not absolve defendant of FMLA liability. Defendant bore the risk that plaintiff's entitlement to FMLA leave would later be established. *See Paulson v. Superior Plating, Inc.*, No. 03-3118, 2004 WL 2203408, at *5-*6 (D. Minn. Sept. 27, 2004); *cf. Caldwell*, 208 F.3d at 677 ("An employer does not avoid liability by discharging an employee who takes leave in order to seek treatment for a condition that is later held to be covered by the FMLA. The employer who precipitously fires an employee, when the latter claims the benefits of leave under FMLA, bears the risk that the health

_____

[7]*Walton*, *supra*, upon which defendant relies, is inapposite. In *Walton*, the Sixth Circuit found that the employee's notice was insufficient because (a) it was not communicated to the employer, but to the employer's security guards who were independent contractors, in violation of the company's policies, (b) although the employee informed his employer that he had twisted his knee, he did not inform the employer that he would need any time off for this condition, (c) he did not provide any documentation notwithstanding that he was requested to do so, and (d) he had merely informed security, when phoning-in his absences, that he was "sick". *See Walton*, 424 F.3d at 486-87. Here, on the contrary, plaintiff directly communicated his request for leave to the appropriate person at PSI, informed PSI of the particular problem he was having, and provided medical information in support of his leave request. Further, unlike in *Walton*, here PSI had knowledge of plaintiff's previous knee condition. Accordingly, *Walton* is not controlling here.

condition in question later develops into a serious health condition within the meaning of 29 C.F.R. § 825.114(a).").

Finally, the "negative certification" principle recognized in *Nawrocki v. United Methodist Retirement Communities, Inc.*, 174 Fed. Appx. 334 (6th Cir. 2006), has no applicability here. In *Nawrocki*, the court held that "an employer is entitled to rely on a 'negative certification' in denying FMLA leave." *Id.* at 338. A "negative certification" is an indication or statement by the employee's doctor that the plaintiff is not precluded from working. *See id.* Here, defendant relies on plaintiff's 2003 leave, at the conclusion of which he was allowed to return to work with no restrictions. However, this does not provide a "negative certification" that plaintiff's May 2005 flare-up was not an incapacitating event qualifying for FMLA leave. On the contrary, Dr. Finch's note explicitly stated that plaintiff's condition did necessitate his absence from work. Thus, there was no "negative certification" regarding plaintiff's ability to work on May 2-3. While that two day absence alone may not have qualified for FMLA leave, based on plaintiff's prior history of problems with his right knee it then became PSI's duty to inquire further. Certainly, nothing in the medical notes of 2003 provide a "negative certification" that plaintiff would never again experience any incapacitating problems relating to his underlying knee condition. Thus, *Nawrocki* and the negative certification principle it establishes are inapplicable here.

Accordingly, the Court should conclude that defendant is not entitled to judgment as a matter of law on plaintiff's entitlement claim based on plaintiff's alleged failure to provide adequate notice.

3.      *Retaliation*

Plaintiff also brings a claim for retaliation based on his termination following his leave on May 2-3, 2005. The Court should conclude that genuine issues of material fact remain with respect

17

to plaintiff's retaliation claim.

As noted above, plaintiff's FMLA retaliation claim is analyzed under the familiar *McDonnell Douglas* burden-shifting framework. In order to demonstrate a prima facie case, plaintiff must show that:

> (1) []he was engaged in activity protected by the FMLA; (2) the employer knew that []he was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to h[im]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian*, 454 F.3d at 556.

Here, plaintiff's retaliation claim rises or falls with his entitlement claim. If he did not, in fact, have a serious health condition, and thus was not entitled to FMLA leave, plaintiff would be unable to show that he was engaging in activity protected by FMLA or that PSI fired him for his exercise of FMLA rights. *See Moorehardt v. Spirit Airlines, Inc.*, 174 F. Supp. 2d 1272, 1280-81 (M.D. Fla. 2001); *id*. at 1280 n.43 (citing cases). On the other hand, if plaintiff can show that he was entitled to FMLA leave, then his *prima facie* case is easily satisfied. The first three elements would be established because plaintiff was attempting to take FMLA leave, his employer knew this, and the employer terminated him for it. *See Bryant v. Delbar Prods., Inc.*, 18 F. Supp. 2d 799, 809 (M.D. Tenn. 1998). Further, there is no question that plaintiff was fired as a result of his absences on May 2-3, thus satisfying the fourth element of his *prima facie* case.[8]

---

[8]Plaintiff argues that he has direct evidence of retaliation, and thus need not establish a *prima facie* case. Plaintiff basis this argument on his affidavit detailing a telephone conversation between his wife and Tomschin. Plaintiff does not aver that he was a party to the conversation, only that he heard his wife's end of the conversation. He then avers that "[i]mmediately after the call ended, my wife told me that Mr. Tomschin stated, in an irritated tone of voice, that every time I run out of vacation time, I find a way to use the FMLA to excuse my time off from work." Pl.'s Resp., Ex. S, ¶ 4. Defendant contends that this affidavit is insufficient to establish direct evidence

Further, if plaintiff were entitled to FMLA leave for May 2-3, 2005, his prior excessive absenteeism neither defeats his *prima facie* case nor provides a legitimate, non-discriminatory reason for his termination. While excessive absenteeism might negate the causal element or provide a legitimate, non-discriminatory reason for plaintiff's termination in general, here there is no doubt that the precipitating event in PSI's termination decision was plaintiff's May 2-3 absences. If those absences are covered by FMLA, PSI was not entitled to consider them in terminating plaintiff. *See Peter v. Lincoln Tech. Inst., Inc.*, 255 F. Supp. 2d 417, 445 (E.D. Pa. 2002); *Marrero v. Camden County Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 466 (D.N.J. 2001); *cf. Willard v. Ingram Constr. Co., Inc.*, No. 98-6261, 1999 WL 801580, at *2 (6th Cir. Sept. 28, 1999) ("Termination for excessive absenteeism during leave protected under FMLA violates the FMLA.").

Thus, to the extent that genuine issues of material fact remain with respect to whether plaintiff was entitled to FMLA leave for his May 2-3, 2005, absences, genuine issues of material fact also remain with respect to his retaliation claim. The Court should accordingly deny the parties' motions for summary judgment on this claim.

D.     *Conclusion*

In view of the foregoing, the Court should conclude that genuine issues of material fact remain and that, based on these issues of fact, neither part is entitled to judgment as a matter of law with respect to plaintiff's entitlement and retaliation claims under FMLA. Accordingly, the Court should deny plaintiff's motion for partial summary judgment and deny defendant's motion for

---

of retaliation because it presents nothing more than inadmissible hearsay. *See Carter v. University of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003). Because plaintiff has established a *prima facie* case sufficient to withstand summary judgment, the Court need not resolve this matter here.

summary judgment.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/7/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 7, 2008.

                                    s/Eddrey Butts
                                    Case Manager